381 F.3d 1328
 G & R PRODUCE COMPANY, Frontera Produce, Inc., G-M Sales Co., I. Kunick Co., Limeco, Inc., London Fruit, Inc., McAllen Fruit & Vegetable Co., Rio Produce Co., Robert Ruiz, Inc., Trevino International, Inc., Val-Verde Vegetable Co., Plaintiffs-Appellees,
v.
UNITED STATES, Defendant-Appellant.
 No. 04-1082.
 United States Court of Appeals, Federal Circuit.
 August 27, 2004.
 
 Appeal from the United States Court of International Trade, Evan J. Wallach, J.
 Robert T. Givens, Givens & Johnston, PLLC, of Houston, TX, argued for plaintiffs-appellees. With him on the brief was Scott L. Johnston. Of counsel was Joseph A. Acayan.
 Amy M. Rubin, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, NY, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General; and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Chief Counsel, U.S. Customs and Border Protection, of New York, NY.
 Before MAYER, Chief Judge, RADER and PROST, Circuit Judges.
 MAYER, Chief Judge.
 
 
 1
 The United States Customs Service ("Customs") appeals the judgment of the Court of International Trade, which held that: (1) the misclassification of Persian limes imported by G & R Produce Company and ten other importers (collectively "G & R") resulted from a mistake of fact; and (2) the entries should therefore be reliquidated pursuant to 19 U.S.C. § 1520(c)(1).[1] G & R Produce Co. v. United States, 281 F.Supp.2d 1323 (Ct. Int'l Trade 2003). We affirm.
 
 
 Background
 
 
 2
 Until 1994, Persian limes[2] were liquidated under subheading 0805.30.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which refers to "limes (Citrus aurantifolia)." On June 30, 1994, Customs issued Administrative Message 94-0661, which added 0805.90.10, HTSUS, a new statistical breakout, to subheading 0805.90.00, HTSUS. Prior to this addition, subheading 0805.90.00, HTSUS, read: "Citrus fruit, fresh or dried: Other, including kumquats, citrons and bergamots." The new subheading 0805.90.10, HTSUS, reads: "Citrus fruit, fresh or dried: Other, including kumquats, citrons and bergamots: Tahitian limes, Persian limes and other limes of the citrus latifolia variety." Thus, the Administrative Message alerted both Customs agents and the industry that the correct botanical designation for Persian limes is Citrus latifolia. This information, which is alleged to have been previously unknown, led to the conclusion that Persian limes should never have been liquidated under subheading 0805.30.40, HTSUS, which refers instead to Citrus aurantifolia.[3]
 
 
 3
 In response to this realization, many importers sought reliquidation of their entries of Persian limes. Because these protests were received more than ninety days after the initial liquidation, Customs treated the importers' requests as protests under section 1520(c)(1). Customs agreed that the Persian limes had been incorrectly liquidated; nevertheless, it denied the importers' requests. Customs reasoned that the parties had misconstrued the phrase "limes (Citrus aurantifolia)" in subheading 0805.30.40, HTSUS, as including all limes. According to Customs, such a misreading of HTSUS is an error in the construction of a law; thus reliquidation under section 1520(c)(1) is prohibited.
 
 
 4
 The importers initiated suit in the Court of International Trade, which consolidated the cases and stayed further action pending the outcome of a test case. In the test case, the Court of International Trade granted the importer summary judgment, holding that "the proper botanical classification of an imported botanical item is not part of the legal analysis for classification purposes."[4] Black & White Vegetable Co. v. United States, 125 F.Supp.2d 531, 534 (Ct. Int'l Trade 2000). Although Customs did not appeal this decision, it refused to stipulate to a judgment with respect to G & R. Instead, it asserted that there was evidence that G & R's brokers and the relevant Customs agents were aware of the correct botanical designation for Persian limes[5] and, therefore, summary judgment was inappropriate. The Court of International Trade agreed, holding that "evidence suggests Customs import specialists may have misclassified the subject limes due to a misapprehension of the applicable tariff provision and not a misunderstanding of the correct botanical classification." G & R Produce, 245 F.Supp.2d at 1306.
 
 
 5
 The Court of International Trade then held a trial. G & R Produce, 281 F.Supp.2d at 1323. Based on the deposition testimony of G & R's brokers and the live testimony of Magdalena Gonzalez-Castilleja, the Customs specialist responsible for the entry of the limes, the court found that neither the brokers, id. at 1333 n. 14, nor the relevant Customs employees, id. at 1328, were aware of the correct botanical designation for Persian limes. This conclusion, and Gonzalez-Castilleja's testimony that she "would have classified the limes differently, prior to publication of the Administrative Message, had she known two distinct varieties of limes existed, and the correct botanical name for each," led the court to grant judgment in favor of G & R. Id.
 
 
 6
 On appeal, Customs makes two arguments. First, it disputes the court's holding that G & R need only prove that either the importer or Customs made a mistake of fact to qualify for reliquidation pursuant to section 1520(c)(1). See id. at 1329. It contends that both the importer and Customs must have made a mistake of fact. It argues that the judgment should therefore be reversed because the court clearly erred in holding that G & R's brokers were unaware of the correct botanical designation for Persian limes. Second, Customs asserts that the erroneous liquidation resulted from the misinterpretation of the term "limes" in the tariff provision as including all limes. According to Customs, such a misinterpretation, no matter its source, amounts to an error in the construction of the law.
 
 
 Discussion
 
 
 7
 We exercise jurisdiction over the Court of International Trade's decision pursuant to 28 U.S.C. § 1295(a)(5). We review the finding that both G & R's brokers and Customs were unaware of the correct botanical designation for Persian limes for clear error. See Lynteq, Inc. v. United States, 976 F.2d 693, 696 (Fed.Cir.1992). We review the determination that a mistake of fact not amounting to an error in the construction of a law caused the erroneous liquidation de novo. See Degussa Can. Ltd. v. United States, 87 F.3d 1301, 1303 (Fed.Cir.1996) (reviewing de novo whether undisputed facts merit reliquidation pursuant to section 1520(c)(1)); ITT Corp. v. United States, 24 F.3d 1384, 1386 (Fed.Cir.1994) (reviewing Court of International Trade's interpretation of statutes de novo).
 
 
 8
 To fall within section 1520(c)(1)'s sphere of authority, a plaintiff is required first to prove that the error causing the misclassification is a "clerical error, mistake of fact, or other inadvertence." 19 U.S.C. § 1520(c)(1) (2000); Ford Motor Co. v. United States, 157 F.3d 849, 857 (Fed.Cir.1998). A mistake of fact occurs when either: "(1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to." Hambro Auto. Corp. v. United States, 66 C.C.P.A. 113, 603 F.2d 850, 855 (CCPA 1979). For example, we found that a mistake of fact meriting reliquidation occurred in ITT Corp., 24 F.3d at 1385, where both Customs and the importer believed that the imported automobile parts were other than they actually were. Similarly, United States v. C.J. Tower & Sons of Buffalo, Inc., 61 C.C.P.A. 90, 499 F.2d 1277, 1278 (CCPA 1974), granted relief because both Customs and the importer were unaware that the imported fuel cells qualified as emergency war material and were, therefore, duty-free.
 
 
 9
 Second, the plaintiff must show that the error does not amount to a misconstruction of the law. Id. An error in the construction of the law occurs when the facts are known, but the legal significance of those facts is not appreciated. Century Imps., Inc. v. United States, 205 F.3d 1308, 1313 (Fed.Cir.2000); Hambro, 603 F.2d at 855. Thus, as Customs correctly asserts, some errors that qualify as a "clerical error, mistake of fact, or other inadvertence" may not justify reliquidation because they are also errors in the construction of the law. Ford, 157 F.3d at 857 ("[T]he statute contemplates that some errors that are prima facie correctable will also be `error[s] in the construction of a law.'" (quoting 19 U.S.C. § 1520(c)(1) (2000))). The facts in Hambro, 66 C.C.P.A. 113, 603 F.2d 850, epitomize an error in the construction of a law. Hambro, the importer, used Home market expenses and profits rather than Export market expenses and profits to determine its cost of production. Id. In requesting relief, the importer claimed that its use of the wrong accounting information constituted a mistake of fact. Id. at 852. We upheld the original liquidation, noting that Hambro was aware of the correct accounting information in both its Home and Export markets; its error occurred in reading and understanding the directions given to it by Customs, not in compiling or processing the relevant data. Id. at 855.
 
 
 10
 Customs' first argument turns on whether both Customs and the importer must have made a mistake of fact to qualify for reliquidation under section 1520(c)(1). We answer in the negative; a mistake of fact need only be made by either Customs or the importer. In coming to this conclusion, we are guided by Degussa, 87 F.3d at 1304, and Ford, 157 F.3d at 857. In Degussa, the court stated that section 1520(c)(1) was enacted to enable "the correction of errors and mistakes of the importers or the Customs Service ... which cannot be corrected under existing law." 87 F.3d at 1304 (quotation marks omitted) (emphasis added) (quoting C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust.Ct. 17, 336 F.Supp. 1395, 1399 (quoting Hearings on H.R. 5505 before the Senate Comm. on Fin., 82d Cong., 2d Sess., 30 (1952))). While this statement was intended to emphasize the role of section 1520(c)(1) as a means of correcting historically uncorrectable errors, it plainly contemplates that such errors may be made by either Customs or the importer. This understanding was reiterated in Ford, 157 F.3d at 857, which held that section 1520(c)(1) "allows the correction of errors made not only by employees of Customs, but also by employees of an importer." Thus, it was assumed that a mistake of fact by Customs alone would have been sufficient to trigger section 1520(c)(1).
 
 
 11
 We garner additional support from cases such as Aviall of Tex., Inc. v. United States, 70 F.3d 1248 (Fed.Cir.1995), which granted relief to an importer based solely on the showing that the importer made a mistake of fact as to whether a certain form had been filed. Neither the Court of International Trade nor this court required proof that Customs also believed the correct form had been filed. Id. Indeed, had Customs been mistaken as to whether the form had been filed, we presume it would not have imposed an incorrect tariff.
 
 
 12
 Finally, the purpose of section 1520(c)(1) as a means for refunding money erroneously collected suggests that it should be interpreted liberally. See id. at 1250 (recognizing section 1520(c)(1)'s "liberal scope of correction"); ITT Corp., 24 F.3d at 1388-89 (noting that "Congress clearly envisioned a liberal mechanism for the correction of the specific inadvertences set forth in § 1520(c)(1)"). But see Fujitsu Compound Semiconductor v. United States, 363 F.3d 1230, 1235 (Fed.Cir.2004) (referring to section 1520(c)(1) as a "limited exception"). Thus, G & R need show only that Customs or G & R's brokers made a mistake of fact that resulted in misclassification, not that both did.
 
 
 13
 In assessing Customs' contention that its agents made a mistake of fact amounting to an error in the construction of a law, we turn first to the evidence presented at trial and the findings of fact made by the Court of International Trade. During her testimony, Gonzalez-Castilleja admitted that prior to reading the Administrative Message she had never seen the term "Citrus latifolia" nor did she know that there was more than one botanical variety of lime. The following colloquy further illustrates that Gonzalez-Castilleja mistakenly believed that "Citrus aurantifolia" encompassed all lime varieties:
 
 
 14
 Q: Prior to [reading the Administrative Message], did you believe that the phrase "citrus aurantifolia" contained in Tariff Heading 0805, subheading 30, correctly described all limes?
 
 
 15
 A: That's correct.
 
 
 16
 Based on her testimony, the trial court concluded that, as a result of not knowing the correct botanical designation for Persian limes, Customs incorrectly believed that "Citrus aurantifolia" encompassed all limes and, therefore, misclassified G & R's goods under 0805.30.40, HTSUS. G & R Produce, 281 F.Supp.2d at 1328.
 
 
 17
 We agree that a mistake of fact not amounting to an error in the construction of the law caused the erroneous liquidation of G & R's limes. A fact—that the botanical designation of Persian limes is "Citrus latifolia"—existed, but was unknown; and a fact—that "Citrus aurantifolia" applies to all limes—was believed, but was not correct. See Hambro, 603 F.2d at 853-54 ("[A mistake of fact] has been defined as a mistake which takes place when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist."). Such a mistake is analogous to believing a product to be other than it is, see ITT Corp., 24 F.3d at 1385, or believing that a form has been filed when it has not, see, e.g., Executone Info. Sys. v. United States, 96 F.3d 1383, 1384 (Fed.Cir.1996). This mistake of fact does not amount to an error in the construction of a law because it resulted in the misapprehension of subheading 0805.30.40, HTSUS, and the erroneous classification of Persian limes. If that were the case, section 1520(c)(1) would be meaningless because all mistakes of fact covered by section 1520(c)(1) result in an erroneous liquidation. See id. at 1388 ("[A]ccepting the government's argument that this case involved a mistake of law would lead to the absurd result that section 1520(c)(1) could never be used to correct a liquidation because then all liquidations would involve a question of law."). Having determined that G & R need only prove that Customs or G & R's brokers made a mistake of fact, and that Customs made a mistake of fact that did not amount to an error in the construction of a law, we need not address Customs' arguments pertaining to G & R's brokers.
 
 
 Conclusion
 
 
 18
 Accordingly, the judgment of the Court of International Trade is affirmed.
 
 
 19
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 19 U.S.C. § 1520(c)(1) states, "Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct — (1) a clerical error, mistake of fact, or other inadvertence ... not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence."
 
 
 [2]
 Persian limes, which resemble large green lemons in appearance, are larger than Key limes and seedless
 
 
 [3]
 Subsequent to the issuance of the Administrative Message, it was also learned thatCitrus aurantifolia refers to Key limes, not to limes generally.
 
 
 [4]
 It was undisputed inBlack & White that both the brokers and Customs agents were unaware of the correct botanical designation for Persian limes. 125 F.Supp.2d at 534.
 
 
 [5]
 Several entry documents relating to G & R's limes included the correct botanical name for Persian limes,Citrus latifolia. G&R Produce Co. v. United States, 245 F.Supp.2d 1304, 1307 (Ct. Int'l Trade 2002).